FRANCIS E. CROARKIN

*v.*

ELEANOR HUTCHINSON.

*Opinion filed October 19, 1900—Rehearing denied December 7, 1900.*

CREDITOR'S BILL—*what sufficient to sustain decree for complainant on creditor's bill.* A decree for the complainant in a creditor's bill proceeding seeking to have certain shares of hotel stock, held in the name of the judgment debtor's wife, decreed to be the property of her husband, should be sustained under evidence that the hotel furniture and fixtures, transferred to the hotel company, upon its incorporation, as payment for the stock, was the accumulation of the joint efforts of both husband and wife for a number of years, and that suit to recover the indebtedness due from the husband to complainant was pending when the stock was issued to the wife.

*Hutchinson v. Croarkin,* 87 Ill. App. 557, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

WILLIAM A. DOYLE, (FRANCIS E. CROARKIN, of counsel,) for appellant.

ELMER D. BROTHERS, (LUTHER LAFLIN MILLS, of counsel,) for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a creditor's bill by Francis E. Croarkin, the appellant here, filed in the circuit court of Cook county in August, 1896, to reach certain stock in a corporation known as the Oakland Hotel Company, originally issued to Eleanor Hutchinson, alleged to belong to her husband, Joshua Hutchinson, and subject it to the payment of a judgment of $500 against him in favor of appellant, rendered in the Cook circuit court in January of that year. The principal theory of the bill is, that in the formation of this corporation the stock, although issued to the wife,

was paid for with the assets of the business of the Gresham Hotel, belonging, in part, to the husband, and that its issuance in this manner was in fraud of his creditors.

Upon a hearing below the chancellor found that Joshua H. Hutchinson and Eleanor Hutchinson were in partnership, and each had an equal share and owned and possessed the Gresham Hotel business and property; that J. H. Hutchinson was entitled to and owned one-half the stock of the Oakland Hotel Company; that said claim of complainant existed prior to December, 1891, and he was a creditor at the time of said conveyance of the assets of the Gresham Hotel; that said transfer was made by Joshua H. Hutchinson to hinder and delay his creditor, Croarkin; that Joshua H. Hutchinson is the owner of 297 shares of stock of the Oakland Hotel Company now in the hands of Eleanor Hutchinson, and that Croarkin is entitled to have the same sold to satisfy his judgment, interest and costs. It was decreed that Eleanor Hutchinson endorse over, deliver and assign to Thomas Taylor, Jr., the said 297 shares of stock, to be assigned by him to the purchaser or purchasers after sale of the same as therein provided. The decree concludes with an order for the sale of the stock, directing the application of the proceeds. The cause was appealed to the Appellate Court for the First District, where the decree below was reversed and the cause remanded, with directions to dismiss the bill. The judgment debtor having obtained from that court a certificate of importance, Croarkin prosecutes this appeal.

The only question below, and here, is one of fact, namely, whether or not a part of the stock of the Oakland Hotel Company, when that corporation was organized, in 1894, belonged, in equity, to Joshua Hutchinson. From the evidence it appears that appellee, for several years prior to her marriage with Joshua Hutchinson, was engaged in conducting a boarding house at No. 2256 Wabash avenue, Chicago, and owned a stock of hotel fix-

tures of the value of about $1800, encumbered by a small chattel mortgage. In 1885 she and Mr. Hutchinson were married, and thereafter the boarding house business was enlarged, from time to time, by renting adjoining buildings, and it came to be known as the Gresham Hotel. In May, 1894, they opened up the Oakland Hotel and transferred to it all the fixtures, furniture, etc., except the carpets, formerly used in the Gresham Hotel. Later they organized the corporation known as the Oakland Hotel Company, and the furniture, fixtures, etc., were turned over to it, amounting in value to about $15,000. The capital stock of the corporation was fixed at $15,000, in shares of $25 each. Five hundred and ninety-five shares were issued to appellee and one to her husband.

At the time of their marriage the husband was in the employ of Carson, Pirie, Scott & Co. at a salary of $20 per week, and continued to hold this position until about 1890. Up to 1894 it is apparent the husband and wife were jointly engaged in the boarding house and hotel business, although the husband was a part of the time also engaged in other enterprises. The money received from the hotel business, and his salary, seem to have been kept in one account and as a common fund. He was joined as one of the lessees of the premises occupied in the business, and up to the date of the organization of the corporation gave his time and attention to the business, he and appellee living in the usual manner of husband and wife, each apparently working for the success of a joint enterprise. Although the wife testifies that the husband never had any interest in the hotel business, we think such statement is at variance with the facts detailed even by her.

When the corporation was organized the husband was indebted to the appellant and a suit was then pending against him, which was afterwards reduced to the judgment of $500 before mentioned. This indebtedness existing at the date of the transaction seems to furnish the

only explanation as to why substantially all of this stock was issued to the wife, rather than a considerable portion of it to the husband. Invested in this hotel business was an accumulation of property, the result of their joint efforts extending over a long period of time, and the fact that it was transferred to the corporation as belonging solely to the wife, the husband then being in debt, is open to grave suspicion. The chancellor deemed it fraudulent as against the indebtedness of appellant, and from a careful reading of the testimony we think his finding is amply supported by the evidence. His opportunities for observing the witnesses when testifying, and noting their frankness and candor, are denied us; but, to say the least, the record itself clearly affords ground for such a finding of fact. We think the Appellate Court erred in overruling the finding of fact there made. Its judgment will be reversed and the decree of the circuit court affirmed.

*Judgment reversed.*